**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | No. CV-19-00235-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| United States Department of Justice, et al., | |
| Defendants. | |

In an Order filed on September 7, 2021, the Court addressed various discovery issues and ordered Defendants to (1) file a Notice responding to all concerns raised in Plaintiff's May 5, 2021 letter concerning Defendants' response to Plaintiff's Request for Production ("RFP") 2; (2) file a Notice describing how Defendants searched for documents responsive to Plaintiff's RFP 7; (3) search Plaintiff's Central File for a final decision by the Bureau of Prisons ("BOP") Medical Director on Plaintiff's request for gender-affirming surgery; and (4) file a Notice updating the Court on the status of Plaintiff's prescription eyeglasses and allegedly lost documents. (Doc. 86.) The Court also ordered Plaintiff to file a Notice proposing limitations for a search for documents responsive to her RFP 6, including a specific date range and specific individuals. (*Id.* at 7, 12.)

Both Defendants and Plaintiff filed Notices in compliance with the Court's Order (Docs. 88, 89, 90), and they responded to one another's filings (Docs. 92, 93, 94). The Court addresses below the parties' supplemental filings, as well as Defendants' pending

Request for Permission to File Motion to Compel (Doc. 91) and Motion to Seal (Doc. 98).

## I. Plaintiff's Eyeglasses

On July 15, 2021, Plaintiff notified the Court that her prescription eyeglasses were broken during an assault that occurred on June 17, 2021. (Doc. 78 at 1-2; Doc. 78-1.) In its September 7, 2021 Order, the Court required Defendants to update the Court on the status of Plaintiff's prescription eyeglasses. (Doc. 86 at 11, 13.) In their supplemental Notice, Defendants aver that Plaintiff first mentioned the broken eyeglasses to prison medical personnel over a month after raising the issue to this Court and that, once Plaintiff brought the issue to medical personnel's attention, she was scheduled to see an optometrist. (Doc. 88 at 1-2; *see also* Doc. 88-2.) Defendants support this averment with medical records and a declaration by Karen Mercaldo, Assistant Health Services Administrator at the United States Penitentiary II in Coleman, Florida ("USP-II Coleman"), where Plaintiff is housed. (Doc. 88-2.)

On October 20, 2021, Defendants moved to file an additional exhibit under seal on the grounds that it contains Plaintiff's confidential, protected medical records. (Doc. 98.) The additional exhibit contains medical records and another declaration by Karen Mercaldo, attesting that Plaintiff was seen on October 7, 2021 by a contract optometrist and that eyeglasses have been ordered. (Doc. 99.) The Court will grant Defendants' Motion to Seal.

Based on Defendants' supplemental Notice (Doc. 88) and the accompanying declarations and exhibits (Doc. 88-2; Doc. 99), the Court considers the broken eyeglasses issue to be resolved.

## II. Plaintiff's Lost Documents

Plaintiff also notified the Court that prison staff lost her case files when packing items in her cell after the June 17, 2021 incident. (Doc. 78 at 1-2; Doc. 78-1.) In its September 7, 2021 Order, the Court required Defendants to update the Court on the status of Plaintiff's allegedly lost documents and, if the lost documents had not been returned to

Plaintiff, to provide Plaintiff with copies of all Court Orders and discovery produced to date in this case. (Doc. 86 at 11, 13.)

In their supplemental Notice, Defendants aver that, because Plaintiff has never provided an itemized list of purportedly lost documents, Defendants cannot determine which documents were lost when Plaintiff was placed in the Special Housing Unit ("SHU") on June 17, 2021, and Defendants cannot arrange for the return of any purportedly lost documents. (Doc. 88 at 2-3.) Accordingly, Defendants aver that they sent Plaintiff copies of all Court Orders and discovery produced to date in this case, as directed by the Court's September 7, 2021 Order. (*Id.* at 3; *see also* Doc. 86 at 13; Doc. 89 at 4.) Defendants attach a declaration by Anissa Jackson, Unit Manager at USP-II Coleman. (Doc. 88-3.) Ms. Jackson avers that when Plaintiff was placed in the SHU, her property was packed and inventoried by staff. (*Id.* at 4.) Plaintiff's property included a green bag of personal papers which were not inventoried. (*Id.*) Ms. Jackson avers that Plaintiff has not provided the Unit Team with an itemized list of documents allegedly lost. (*Id.*)

In response, Plaintiff avers that the lost documents were contained in three large manilla envelopes marked "Pinson v. DOJ, 19-cv-235 DAZ" and labeled "Volume I," "Volume II," and "Volume III." (Doc. 93 at 2.) Plaintiff submitted a declaration signed under penalty of perjury averring to the same. (*Id.* at 5.) Plaintiff further avers in her Response—though not in her declaration signed under penalty of perjury—that Defendants have not sent her all Court Orders and discovery produced to date in this case. (*Id.* at 2.)

As discussed above, Defendants have represented to the Court, under penalty of sanctions under Federal Rule of Civil Procedure 11, that they have provided Plaintiff with copies of all Court Orders and discovery produced to date in this case, as directed by the Court's September 7, 2021 Order. Accordingly, the Court will not at this time order any further relief regarding Plaintiff's purportedly lost documents. If Plaintiff has, to date, not received copies of the Court Orders and discovery, she may file a declaration

attesting to that fact under penalty of perjury, and the Court will re-visit the issue at that time.

### III. Plaintiff's Requests for Production

#### A. Legal Standard

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In determining proportionality, the Court must evaluate all information provided by the parties and then reach "a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P 26, advis. comm. notes to 2015 amends.

A party may serve on any other party a request for production that is within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). The responding party "has a duty to undertake a diligent search and reasonable inquiry in order to adequately respond to requests for production." *Burnett v. United States*, No. EDCV-15-1707-CAS(KKx), 2016 WL 3392263, at *6 (C.D. Cal. June 14, 2016). The party seeking to compel discovery bears the burden of establishing that its requests satisfy relevancy requirements, and the party opposing discovery bears the burden of supporting its objections and showing why discovery should not be allowed. *La. Pac. Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

#### B. RFP 2

In RFP 2, Plaintiff requested: "All emails, memoranda, letters/correspondence, text messages, electronic communications, voice recordings, video recordings between the staff of U.S. Penitentiary Tucson, the Western Regional Office, Transgender Executive Council, TCCT, BOP Medical Director relating to the plaintiff's request for gender-affirming surgery at any point after [her] arrival to USP Tucson." (Doc. 64-1 at

2.)  Defendants objected that RFP 2 is "vague, ambiguous and overbroad," but they produced one email that the BOP discovered upon searching the email accounts of Haight-Biehler, Brieschke, Dr. Ann Ash, Kerri Pistro, and TCN/Warden@bop.gov for emails regarding Plaintiff's request for gender-affirming surgery between the date Plaintiff arrived at USP-Tucson and the date she filed her FAC in this action.  (*Id.*)  In her May 5, 2021 letter, Plaintiff complained that Defendants' search was too narrow because Defendants did not search the emails of "the BOP Medical Director" or "other members of the TEC and TCCT"; did not produce documents regarding a meeting of the TEC mentioned by Pistro; did not produce documents regarding regional or Central Office involvement; and did not search using terms such as "transgender" or "TEC."  (Doc. 65-4 at 5.)  In its September 7, 2021 Order, the Court required Defendants to file a Notice responding to all concerns raised by Plaintiff in her May 5, 2021 letter concerning Defendants' response to RFP 2.  (Doc. 86 at 5, 11.)

In their supplemental Notice, Defendants aver that they searched the email accounts of each defendant, Plaintiff's primary physician, the Warden, and the head of the Transgender Executive Council ("TEC") for any reference to Plaintiff, and then narrowed the search to Plaintiff's request for gender-affirming surgery.  (Doc. 89 at 2.)  Although they aver that agendas or minutes of the TEC are not responsive to RFP 2, Defendants have provided redacted agenda/minutes from TEC meetings on September 23, 2019, October 7, 2019, and October 23, 2019.  (*Id.* at 3; *see also* Doc. 89-1.)  The agenda/minutes show that the TEC decided Plaintiff should remain at USP-Tucson.  (Doc. 89 at 3; Doc. 89-1.)  Defendants aver that, because transfer to a lesser security institution is a prerequisite to transfer to a female institution, which itself is a prerequisite to gender-affirming surgery, Plaintiff did not qualify for gender-affirming surgery and her request for such surgery was not forwarded to the TCCT or Medical Director.  (Doc. 89 at 2-3.)  Defendants therefore argue that there is no reason to believe a search of the email accounts of the Medical Director or members of the TCCT would yield any relevant results.  (*Id.* at 2.)

In response, Plaintiff argues that Defendants' search for documents responsive to RFP 2 was inadequate because Defendants imposed a time frame on the search, only searched for emails, did not search the email accounts of the BOP Medical Director, and did not produce documents reflecting what the TCCT recommended to the Medical Director. (Doc. 94.)

Plaintiff did not argue in her May 5, 2021 letter that Defendants' search was inadequate because it was limited to emails and included a time frame; accordingly, the Court does not find that Plaintiff's meet-and-confer efforts were adequate with respect to those arguments. Furthermore, the Court finds that Defendants' search for documents responsive to RFP 2 was reasonable overall. Defendants imposed a reasonable time frame on the search, beginning with the date Plaintiff arrived at USP-Tucson and ending with the date she filed her First Amended Complaint in this action. Furthermore, based on Defendants' averment that Plaintiff's request for gender-affirming surgery was not forwarded to the TCCT or Medical Director because Plaintiff did not meet the prerequisites for such surgery, the Court finds that it was reasonable for Defendants not to search the email accounts of the members of the TCCT or the Medical Director. As Defendants' search for documents responsive to RFP 2 was reasonable overall, the Court will grant no further relief on this issue.

### C.     RFP 3

In RFP 3, Plaintiff requested: "All documents or information within [her] Central File relating to [her] request for gender-affirming surgery at any point after [her] arrival to USP Tucson." (Doc. 64-1 at 2.) Defendants objected that RFP 3 is "overbroad, in that it fails to specify an end date," but Defendants searched Plaintiff's Central File and produced responsive documents from the time period February 15, 2018 to June 6, 2019. (*Id.* at 2-3.) In its September 7, 2021 Order, the Court directed Defendants to again search Plaintiff's Central File, from February 15, 2018 to the present, to determine whether it contains a final decision by the BOP Medical Director. (Doc. 86 at 5, 12.)

In their supplemental Notice, Defendants aver that Plaintiff's Unit Manager

Anissa Jackson conducted a page-by-page search of Plaintiff's Central File from February 15, 2018 to the present and did not locate any documents from the BOP's Medical Director regarding Plaintiff's request for gender affirming surgery. (Doc. 88 at 3.) Ms. Jackson states the same in her declaration attached to Defendants' Notice. (Doc. 88-3 at 4-5.) Based on Defendants' supplemental Notice and Ms. Jackson's declaration, the Court considers this issue resolved.

### D.     RFP 6

In RFP 6, Plaintiff requested: "All emails and correspondence mailed or sent to the BOP Central Office relating to amendment of Program Statement entitled 'Transgender Offender Manual.'" (Doc. 64-1 at 4.) Defendants objected that RFP 6 is "vague, ambiguous and overbroad, unduly burdensome, not relevant to any party's claim or defense and not proportional to the needs of the case." (*Id.*) Defendants also argued that the request "is not limited in scope as to time, place, individuals, or content." (*Id.*) In its September 7, 2021 Order, the Court required Plaintiff to file a Notice proposing limitations for a search for documents responsive to RFP 6, including a specific date range and specific individuals. (Doc. 86 at 7, 12.) Plaintiff's supplemental Notice proposes a search "for all information in any format it exists, between Jan. 1, 2017 and May 11, 2018, generated or received by Mark Inch, the BOP Medical Director, all BOP Assistant Directors, the BOP Deputy Director relating to the amendment of the Program Statement entitled 'Transgender Offender Manual.'" (Doc. 90.)

Defendants argue that Plaintiff's Notice expands RFP 6 rather than limiting it, as Plaintiff is now requesting information in any format rather than merely emails and correspondence, and she is requesting information *generated or received* by the listed individuals, whereas her original request only requested emails and correspondence *received* by the BOP Central Office. (Doc. 92 at 1-2.) Defendants further note that Plaintiff's purported date range begins well before Plaintiff arrived at USP Tucson and before Mark Inch became the Director. (*Id.* at 2.) Defendants also argue that Plaintiff's request is overbroad because it would require a search of at least a dozen people's

1  records. (*Id.* at 3.) Finally, Defendants argue that the proposal in Plaintiff's Notice does
2  nothing to address Defendant's remaining objections, including that the Transgender
3  Offender Manual is not relevant to the claims remaining in this case because it does not
4  discuss gender-affirming surgery or whether hormone therapy should proceed by pill or
5  patch. (*Id.* at 3.)

6      The Court agrees with Defendants that the proposal in Plaintiff's Notice does not
7  sufficiently narrow RFP 6. Furthermore, there is no indication that the Transgender
8  Offender Manual or the information requested in RFP 6 is relevant to the remaining
9  claims in this case. Accordingly, the Court denies any further relief on this issue.

10     **E.    RFP 7**

11     In RFP 7, Plaintiff requested: "All documents or information relating to plaintiff's
12 request for gender-affirming surgery while housed at FMC Rochester in 2017 and 2018."
13 (Doc. 64-1 at 4.) Defendants produced one responsive document. (*Id.* at 4-5.) In its
14 September 7, 2021 Order, the Court required Defendants to describe how they searched
15 for documents responsive to RFP 7. (Doc. 86 at 7, 11.)

16     In their supplemental Notice, Defendants aver that, in responding to RFP 7, they
17 searched all of Plaintiff's medical and psychology records from Plaintiff's time at the
18 Federal Medical Center ("FMC")-Rochester for words including "surgery," "testicle,"
19 "vaginoplasty," "affirming," and "removal," and that they produced the only responsive
20 document referencing a request for gender-affirming surgery. (Doc. 88 at 4.) Plaintiff
21 argues that Defendants' search for documents responsive to RFP 7 was inadequate
22 because Defendants did not search the records of the "BOP TCCT" or BOP Medical
23 Director, and Defendants did not produce a January 10, 2018 email from FMC-Rochester
24 psychologist Dr. Jason Gabel or a July 18, 2017 clinical encounter note by Dr. Nancy
25 Jordan. (Doc. 93 at 3-4.)

26     The Court finds that it was reasonable for Defendants to limit their search to
27 Plaintiff's medical and psychology records, and that Defendants' search for responsive
28 documents was reasonable overall. Accordingly, the Court denies any further relief on

this issue.

### IV.   Defendants' Request for Permission to File Motion to Compel

Defendants request permission to file a Motion to Compel addressing Plaintiff's responses to Defendants' interrogatories and requests for production.  (Doc. 91.) Specifically, Defendants aver that the following discovery issues remain outstanding: (1) whether the documents produced by Plaintiff are responsive to any of Defendants' RFPs; (2) if so, to which RFPs the documents are responsive; (3) whether Plaintiff has produced any documents responsive to RFPs 1, 2, 3, 5, or 6; (4) whether Plaintiff is withholding any responsive documents; and (5) the adequacy of Plaintiff's response to Defendants' Interrogatory No. 1.  (Doc. 96 at 2-5.)

Plaintiff argues that Defendants' Request for Permission to File Motion to Compel is "unnecessary and moot."  (Doc. 95 at 1.)  Plaintiff avers that she asked her mother and a law firm that previously represented her in a separate case whether they had any relevant documents, but they did not provide any documents.  (*Id.* at 1-2.)  Plaintiff further avers that she produced every document in her possession, including documents she believed to be unresponsive, in order to be as broad and liberal in her production as possible.  (*Id.* at 3-4.)

The Court's Scheduling Order prohibits any party from filing a written discovery motion without leave of Court.  (Doc. 50 at 3.)  "In the event of a dispute over discovery matters, the parties must engage in personal consultation regarding the dispute and must make a sincere effort to resolve the conflict expeditiously."  (*Id.*)  If, notwithstanding the parties' sincere efforts, the dispute cannot be resolved, "either party may file a request for a telephonic conference or for permission to file a written discovery motion."  (*Id.*)  Any such request "must specify the results of the parties' personal consultation and the matter(s) remaining in dispute."  (*Id.*)

The Court finds that Defendants have sufficiently complied with the Scheduling Order's discovery-dispute procedures.  Defendants' Request and Reply detail their efforts to resolve their disputes through personal consultation with Plaintiff.  The Request and

Reply also clearly specify the matters that remain in dispute. Accordingly, the Court will grant Defendants permission to file a Motion to Compel.

**IT IS ORDERED** that Defendants' Request for Permission to File Motion to Compel (Doc. 91) is **granted**. Defendants may file a Motion to Compel within **fourteen (14) days** of the date this Order is filed. The presumptive page limits and response/reply deadlines set forth in the Local Rules of Civil Procedure shall apply.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal (Doc. 98) is **granted**. The Clerk of Court is directed to file Defendants' supplemental Exhibit (lodged at Doc. 99) <u>under seal</u>.

**IT IS ORDERED** that no further relief will be granted at this time with respect to Plaintiff's purportedly lost documents. If Plaintiff has not received copies of the Court Orders and discovery produced to date in this case, she may file a declaration so stating under penalty of perjury.

**IT IS FURTHER ORDERED** that the Court denies any further relief with respect to Plaintiff's broken eyeglasses and Defendants' responses to Plaintiff's RFPs 2, 3, 6, and 7.

Dated this 21st day of October, 2021.

_____
Honorable Rosemary Márquez
United States District Judge